NEGROES CHARLES and others, *vs.* DIONYSIUS
SHERIFF, Exc'r of H. H. WARING, and others.

Negroes manumitted by a will have the right to file a bill in equity, asking
that court to marshal assets, in order to procure proper evidence to ena-
ble them to prosecute their petition for freedom, and to decide whether
the real estate is charged with the payment of debts in favor of the be-
quest of freedom, and on such a bill are entitled to an *injunction*, restrain-
ing the prosecution of their petition for freedom, and the executor from
paying pecuniary legacies, and judgment creditors from selling them un-
der execution, until these questions are settled.

It is no objection to such a bill for an injunction that it is not verified by
*affidavit*, the negroes being incapable of making such an affidavit, and the
production of an authenticated copy of the will being sufficient; it is not
indispensable *in all cases*, that a bill for an injunction should be sworn to;
all that is required is, that the confidence of the court should be obtained,
and this may be had on documentary evidence as well as on affidavit.

Nor is it any objection to such a bill that no *injunction bond* was tendered,
for no bond could be tendered until the court fixed the amount of the
penalty, and if the court had granted the injunction, it would have done
so, on condition that a prescribed bond should be first filed.

APPEAL from the equity side of the Circuit Court for Prince
Georges county.

This appeal is taken from an order of the court below re-
fusing to grant an injunction upon a bill filed by the appellants.

The record shows that Henry H. Waring, by his will, exe-
cuted on the 28th of May 1853, and admitted to probate, on
the 22nd of August 1854, devised and bequeathed as follows:
"After my debts and funeral charges are paid, I devise and
bequeath as follows: *Item.* It is my will and desire that at
my death all my slaves, as follows, Charles, Sylvester, Wil-
liam, Hanson, Albert, Washington, Laura and Henry, shall
be free, and that my executors hereinafter named, shall im-
mediately after my death remove them from the State of Mary-
land to the District of Columbia, or some free State, and make
the necessary provisions out of my personal estate, for their
comfortable support for the space of twelve months from my
death. *Item.* I will and desire, that immediately after my
death, my executors hereinafter named shall sell the farm on
which I now reside called Waring's Lot, and the money aris-

ing from the sale, I will and devise shall be applied to the payment of the following legacies," viz., legacies of various *sums of money* to different named relatives. "*Item*. I give, devise and bequeath, all the rest and residue of my estate both real and personal, to be equally divided between my four nieces," (naming them,) "and my two nephews," (naming them,) "in equal portions share and share alike." He then appoints two executors, one of whom is the appellee, Sheriff, to whom letters testamentary were granted by the orphans court, on the 24th of August 1854.

On the 10th of April 1858, the negroes thus manumitted by this will, filed their bill in the present case against the executor, the pecuniary and residuary legatees under the will, and also against certain persons named in the bill, as *judgment creditors* of the testator. The object of the bill was to obtain an injunction, to restrain the further trial of a petition for freedom, instituted by the complainants, and then in progress of trial, and also to restrain certain of the judgment creditors from selling the complainants then levied on under executions, and that the assets of the estate may be marshalled, and the respective rights of the several parties interested adjudged, so as to enable the complainants, on the trial of their petition for freedom, clearly to establish the true condition of the estate and their relation to it. The allegations of this bill are sufficiently stated in the opinion of this court. There was *no affidavit* to it, and no injunction bond tendered or filed. The court below, *(Crain, J.,)* refused to grant the injunction prayed for, being of opinion that the bill did not make "such a case as will justify a court of equity to interfere and delay the creditors in the payment of their just debts." From this refusal the complainants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Daniel C. Digges* and *Thos. G. Pratt* for the appellants:

1st. The case, as made by the bill, was a fit case for the interposition of a court of equity. In the case of *Cornish vs.*

*Wilson*, 6 *Gill*, 299, it was clearly decided, that slaves manumitted by a will, have the right to file a bill in equity, for the purpose of having the assets marshalled, in order to obtain evidence in the trial of their petitions for freedom that their manumission was not in prejudice of creditors, and also to have the aid of that court in determining whether the real estate has been charged with payment of debts to their exoneration. The right of such parties to proceed in equity, is also sustained by the case of *Peters vs. Van Lear,* 4 *Gill,* 249. These cases then have decided, that *manumitted negroes* may file a bill in equity, for an injunction to restrain creditors and the executor from selling them to pay debts, until the true condition of the estate is determined. Such a bill need not be supported by the affidavit of the complainants, for such complainants can make no *affidavit,* and this was the well known law when the decisions above referred to were made. Nor could they give an injunction bond, nor is such bond necessary. All that a court of equity requires in order to grant the writ is, that sufficient proof be tendered to satisfy the court of the propriety of its action, and this may be done by documentary proof as well as by affidavit. 3 *Bland,* 162, *Salmon vs. Clagett.* 1 *Bland,* 180, *Jones vs. Magill. Alexander's Ch. Pr.,* 80, 81. The will which was produced and filed as an exhibit with the bill, clearly showed the manumission of the complainants, and the grounds upon which their claim for relief was based. The bill therefore having been properly filed, it is insisted, that the complainants are entitled to the relief asked for thereby.

2nd. Because the testator clearly intended, that in no event should the complainants be sold as slaves to pay his debts, as he charges his personal estate for their support as free persons, and as, by the residuary clause of the will, he manifestly supposed that his other personal property and land would be more than enough to pay debts and his pecuniary legatees. 2 *Wms. on Excrs.,* 1448. 1 *Merivale,* 229, *Bootle vs. Blundell.*

3rd. Because the entire estate of the testator should be exhausted to pay his debts before these manumitted negroes could be divested of their right to freedom. *Act of* 1796, *ch.*

67, sec. 13. 7 *G. & J.*, 96, *Allein vs. Sharp.* 4 *Md. Rep.*, 351, *Magruder & Tuck, vs. Carroll.* 1 *Md. Ch. Dec.*, 296, *Thomas vs. Wood.*

4th. Because the bequest of freedom to the appellants was a specific bequest, and they, as such legatees, are entitled as against the heirs at law, the personal representatives of the testator, and the pecuniary and residuary legatees, to have the *whole estate* exhausted before their specific legacy can be interfered with. 2 *H. & G.*, 7, *Negro George vs. Corse*, (Opinion of Archer J.) 6 *Gill*, 328, *Cornish vs. Wilson.* 11 *G. & J.*, 185, *Chase vs. Lockerman.* 8 *Gill*, 321, *Spencer vs. Negro Dennis.* 1 *Story's Eq.*, sec. 577. 2 *Wms. Excrs.*, 992. 4 *Ves.*, 748, *Kirby vs. Potter*, note *(a.)* 2 *Ves. Jr.*, 639, *Coleman vs. Coleman*, note *(a.)*

5th. Because, assuming that the pecuniary legacies under this will are also to be considered as specific, there is no principle of law or equity which would make the residue of the testator's debts payable exclusively by these appellants, but that in any event they would be required only to contribute to their payment, ratably with all other specific legatees. 2 *Jarman on Wills*, 393. 6 *Gill*, 301. 11 *G. & J.*, 185. 1 *Merivale*, 229.

*Samuel H. Berry* and *C. C. Magruder* for the appellee, argued that the court properly refused the injunction:

1st. Because the statement of facts contained in the bill, was not verified by an affidavit, as the law requires, nor was a bond proffered by the complainants. *Alexander's Ch. Pr.*, 80, 81. 1 *Bland*, 177, *Jones vs. Magill.* 2 *Bland*, 99, *Binney's Case.* 3 *Bland*, 125, 162, *Salmon vs. Clagett.* 1 *Bland*, 566, *Billingslea vs. Gilbert.* 8 *G. & J.*, 324, *Union Bank vs. Poultney, et al.*

2nd. Because the personal property is the natural fund for the payment of the debts of a deceased party, and the specific legatees of the realty or the proceeds thereof, in this case, are not bound to contribute to the payment of the testator's debts, as within the provisions of his will they will be regarded as specific legatees. 1 *Roper on Legacies*, 149, 154. 18 *Ves.*, 463, *Page vs. Leapingwell.* 2 *H. & G.*, 1, *Negro George*

*vs. Corse.* 11 *G. & J.*, 185, *Chase vs. Lockerman.* 4 *Md. Rep.*, 335, *Magruder & Tuck vs. Carroll.* 11 *Md. Rep.*, 41, *Dugan vs. Hollins. Acts of* 1752, *ch.* 3, and 1796, *ch.* 67. 2 *G. & J.*, 32, *Simmons vs. Drury.* 10 *G. & J.*, 143, *Stevens vs. Gregg.*

3rd. Because under the averments in the complainants' bill, they are not entitled to relief, against the specific legatees of the realty. 6 *H. & J.*, 29, *Chalmers vs. Chambers.* 10 *G. & J.*, 65, *Gibson vs. McCormick.* 6 *Gill*, 105, *Hilleary vs. Hurdle.* 1 *Gill*, 234, *Berry vs. Pierson.*

LE GRAND, C. J., delivered the opinion of this court.

The bill in this case was filed by the appellants, who were the slaves of the testator of the appellee, and who claim to have been manumitted by his last will and testament. It alleges, that the appellee had taken out letters of administration, and had proceeded to some extent in the discharge of his duty as such, but had not returned to the orphans court a full account of his doings as he was required to do by law; that the estate is indebted, some of the claims against which had been prosecuted to judgments which were about to be executed by a levy on the appellants; that some of the judgments were obtained on obligations, in which the testator of the appellee was but security for a person who is a legatee under the will. It avers that there is property above and beyond what is necessary to pay all the debts of the estate without a resort to them, and that by a proper construction of the will of their master and a proper marshalling of assets, the debts of the estate would be paid and they entitled to their freedom; that they had filed a petition for freedom, but that they were unable to prosecute it successfully because of the difficulty in showing the true condition of the assets of the estate. They pray the court to take cognizance of the matters involved, and to so order a marshalling of the assets, and adjudge the respective rights of the several parties interested, as will enable them to clearly establish, on the trial of their petition for freedom, the true condition of the estate and their relation to it, and that until this be done, the petition case be stayed by an injunction, and also the ex-

ecutor from paying the pecuniary legacies in the will, and the judgment creditors from executing their judgments as against them.

The court refused the injunction. It was argued that the court properly did so, if for no other reason, because the bill was not verified by affidavit. In general it is necessary that the bill should be sworn to, but this is not in all cases indispensable. Here, the complainants are negroes, and, under our act of Assembly of 1846, incompetent to give testimony in any case in which a white person is interested. They, therefore, could not have made the affidavit. What is required as preliminary to the granting of an injunction, other than the sufficiency of the averments of the bill, is, that the confidence of the court should be obtained, and this may be had on documentary evidence as well as on affidavit. *Salmon vs. Clagett,* 3 *Bland,* 162. *Jones vs. Magill,* 1 *Bland,* 180. *Alexander's Ch. Prac.,* 80, 81. The evidence accompanying the bill, is an authenticated copy of the will of the testator of the appellees, by which it appears the appellants are set free. There could be no fuller evidence offered of the ground on which rests their claim to freedom. If they be entitled to it at all, it is because of the bequest of it in the will. It is their muniment of title. There is nothing in the objection that no bond was tendered. No bond could be tendered until the court fixed the amount of the penalty. Had the court granted the injunction it would doubtless have done so, on the condition that a prescribed bond should be first filed.

The case of *Cornish vs. Wilson,* 6 *Gill,* 299, is a sufficient precedent for a proceeding like the present. The manumitted slaves under the decision in that case, have a right to the aid of a court of equity, in the marshalling of the assets of the testator under whose will they claim their freedom; and thus to procure the proper evidence to enable them to prosecute their petition for freedom. They are also, as determined by the same authority, entitled to the decision of such a tribunal, as to whether the real estate of the testator is charged with the payment of debts in favor of the bequest of freedom, and the proportion in which specific and general legacies are to con-

tribute to the same end.   These are among the objects of the
bill in this case.   The investigation, from the averments in the
bill can, at the most, occasion but a short delay to any party in
interest, while it will guarantee the preservation of the rights
of a helpless class, if any rights they have.

*Order reversed and cause remanded.*

(Decided July 20th, 1858.)

ECCLESTON, J., dissented.